IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-cv-176-BO

| KEVIN LEE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| JIMMY THORNTON, individually and in | ) | |
| his official capacity as Sheriff of Sampson | ) | |
| County; ANDREW WORELY, individually | ) | |
| and in his official capacity as a Detective for | ) | |
| the Sampson County Sheriff's Office; and | ) | |
| JOHN DOE SURETY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on defendants' motion for summary judgment. [DE 20]. For the reasons discussed below, the motion [DE 20] is GRANTED.

BACKGROUND

Plaintiff Kevin Lee (hereinafter "plaintiff") instituted this action against Sampson County Sheriff Jimmy Thornton and Detective Andrew Worley, asserting that Worley negligently and/or maliciously conducted a criminal investigation into allegations that plaintiff had abused his girlfriend's minor child.

The vast majority of the facts are not in dispute. In April 2015, plaintiff began a romantic relationship with C. Allen. Shortly after the relationship began, plaintiff was introduced to C. Allen's son from a previous relationship. Two months after they began dating, Allen and her son moved in with plaintiff.

On February 7, 2018, Allen went out-of-state for professional training, leaving plaintiff to supervise her son, who was four years old at the time. That evening, as plaintiff prepared to bathe the child, he placed him in the shower and left the room momentarily. When plaintiff

retuned, he saw the child with the shower door open, spraying water on the bathroom floor with the shower wand. Plaintiff instructed him not to do it again. After plaintiff cleaned up the water on the floor, he stepped out of the bathroom to remove the wet towels. When he returned, the child was again spraying the floor with the shower wand. Upset, plaintiff grabbed the child by the arm and spanked him on the buttocks.

When Allen returned from her work trip two days later, she claimed she noticed two large dark bruises on her son's buttocks. Defs.' Statement of Material Facts, ¶ 15, DE 22. When she asked him about the bruises, he revealed that plaintiff had spanked him. *Id.* ¶ 16. She claimed she confronted plaintiff about the bruises and he admitted to the spanking. She then met with her aunt, J. Allen, and told her about the incident. *Id.* ¶¶ 18–19. C. Allen returned home and photographed the bruises on her son. *Id.* ¶ 20. The photographs did not include the child's face or other identifying features.

Plaintiff disputes that Allen saw bruises on her son, that she confronted him, and that she photographed bruises arising from the incident. Pl.'s Statement of Material Facts, ¶¶ 15–20, DE 28. He does not dispute that he spanked the child.

On February 11, 2018, C. Allen reported the child's injuries to law enforcement. The case was referred to the Sampson County and Wake County Departments of Social Services and Detective Worley was assigned to investigate. On February 14, 2018, Wake County social services caseworker Miranda Bell interviewed Allen and her son, during which the child told Bell that plaintiff spanked him after he sprayed water on the floor of the bathroom and that the spanking left bruises on his buttocks. Bell provided a copy of the report to Detective Worley. On February 15, Worley made initial contact with Allen and scheduled a forensic interview for her son at the Child Advocacy Center with Shannon Barber, Director of the Center.

2

Detective Worley also spoke with Sampson County Assistant District Attorney Arneatha Gillis, who was assigned to prosecute child abuse cases. Gillis advised Worley that the injuries rose to the level of misdemeanor child abuse. On February 20, Barber interviewed the child at the Child Advocacy Center while Worley observed via closed-circuit television. The child stated he was spanked by plaintiff for spraying water, but his account was inconsistent as to whether plaintiff used a belt or his hand. At the conclusion of the interview, Allen provided time stamped screen shots showing the date, time, and location of when and where the photographs of the bruises were taken.

On March 6, the child was seen by Dr. Danielle Thomas-Taylor for a medical evaluation. The child stated to Dr. Thomas-Taylor that he was the individual depicted in the photographs. At that time, Dr. Thomas-Taylor observed no bruising on the child. Dr. Thomas-Taylor relayed the information to Worley and gave him a copy of her report.

On March 7, Detective Worley received a telephone call from Norman Smith, a private investigator employed by plaintiff. Smith told Worley that plaintiff had indeed spanked the child, but that plaintiff did not leave the bruises. Smith offered an alternative theory that the child was also hit three different times during the same time period by his great-grandparents. At the end of the conversation, Worley relayed to Smith that he would like to interview plaintiff.

Detective Worley interviewed J. Allen later that day at the Sampson County Sheriff's Office. During the interview, J. Allen told Worley that her mother, C. Allen's grandmother and the child's great-grandmother, was 80 years old and was not physically strong enough to leave bruises on a child after a spanking. She also told Worley that the child was never at his great-grandparents' house during the time period in question and that plaintiff admitted, through text

messages plaintiff sent to her, that he spanked the child. At the conclusion of the interview, Worley obtained copies of plaintiff's text messages to J. Allen.

On March 10, plaintiff's criminal attorney, David Hobson, contacted Detective Worley and advised him that he would bring his client in to talk. On March 21, Hobson called Worley and advised him that he would bring plaintiff in to be interviewed at the beginning of the next week. Hobson and plaintiff, however, never came in for the interview.

At this point, Detective Worley determined that he had enough to present to a magistrate for a determination of probable cause.

On April 6, 2018, Detective Worley presented the information he gathered during his investigation to a magistrate who determined that there was probable cause to charge plaintiff with misdemeanor child abuse. A warrant was issued. That same day, plaintiff and his attorney arrived at the Sampson County Sheriff's Office and plaintiff turned himself in. Plaintiff entered into a Conditional Discharge Agreement with the Sampson County District Attorney's Office. Under the agreement, plaintiff pleaded no contest to misdemeanor child abuse and agreed to comply with the state court's requirements, which included three months of unsupervised probation and participation in counseling sessions. Plaintiff fulfilled the requirements under the Conditional Discharge Agreement at which point the charges were dismissed.

Plaintiff then filed this action in Sampson County Superior Court, bringing a variety of constitutional and state law claims against Detective Worley and Sheriff Thornton, who removed the case to this Court. Following discovery, defendants filed the instant motion for summary judgment. In his response to the motion, plaintiff stipulated to the dismissal of several of his causes of action. Accordingly, remaining before the Court are plaintiff's Fourth Amendment and

substantive due process claims against Detective Worley in his official and individual capacity and against Sheriff Thornton in his capacity as Worley's supervisor.

The motion is fully briefed and is ripe for disposition.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists for trial, a court must view the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted).

Plaintiff's claims are premised on his belief that Detective Worley's investigation was infected with animus towards him. This animus led Worley to cut corners in his investigation, ultimately causing the issuance of an arrest warrant lacking probable cause. Plaintiff further contends that Worley's animus towards him violated his right to due process. Because plaintiff fails to provide evidence supporting either of his claims, both defendants are entitled to summary judgment, and the motion must be granted.

I.   Fourth Amendment

"Probable cause exists when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000). An assessment of probable cause considers the totality of the circumstances. *Id.*

There is no dispute between the parties that before presenting the case to the magistrate, Detective Worley had gathered the following evidence: (1) the information provided by the child medical examination; (2) the child's interview at the Child Advocacy Center; (3) his interviews with C. Allen and J. Allen; (4) the photographs of the bruises; (5) the report from Wake County social services; and (6) the text messages of plaintiff's admission provided by J. Allen. *See* Statements of Material Fact, ¶ 55, DE 22, 28. This evidence is sufficient for probable cause.

Plaintiff argues probable cause was lacking because (1) the photographs contained no face or identifying information, (2) the child was inconsistent in his interview as to whether plaintiff used his belt or his hand, (3) Dr. Thomas-Taylor observed no bruising in her evaluation on March 6, and (4) Worley failed to investigate plaintiff's alternative theories—expressed in his text messages with J. Allen and by his private investigator, that the bruises were caused either by the child's biological father or great-grandparents. Plaintiff also argues that Worley failed to follow up on certain leads because he was bias against plaintiff.

Plaintiff's arguments fail. "Reasonable law enforcement officers are not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Wadkins*, 214 F.3d at 541. Worley gathered extensive evidence that plaintiff had spanked the child, which included text messages from plaintiff admitting that he did so. Plaintiff's alternative theories for the source of the bruises—which were themselves

6

inconsistent—do not vitiate probable cause. Moreover, plaintiff does not dispute that Worley in fact gave him the opportunity to give his statement and that he simply failed to do so. *See* Statements of Material Fact, ¶¶ 52–53, DE 22, 28. Finally, Dr. Thomas-Taylor's evaluation came a full month after the incident and so it makes sense that she observed no bruising; and considering the child's tender age of four, his slightly varied version of events does not cast real doubt on the rest of the evidence.

Plaintiff's allegations of personal bias are not relevant for the probable cause analysis, *see Whren v. United States*, 517 U.S. 806, 812–13 (1996). Furthermore, as discussed below, they are not supported by the record.

II. Due Process

Executive conduct that violates due process is conduct that "involves abusing executive power, or employing it as an instrument of oppression." *Hawkins v. Freeman*, 195 F.3d 732, 742 (4th Cir. 1999) (internal quotations omitted). It must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 738.

Plaintiff argues that Detective Worley acted with malicious intent to harm plaintiff. The record, even when viewed in the light most favorable to plaintiff, contains no such evidence.

Plaintiff's only evidence purporting to show malice are (1) statements Worley made to a Wake County social worker, (2) and the fact that Worley communicated with C. Allen after 5 pm and after the investigation concluded. These provide no support for plaintiff's malice theory. The statements to the social worker are generally descriptive in nature and are not indicative of any personal bias or malice. Pl.'s Br. at 10 (e.g., "C. Allen described plaintiff as controlling," "The defense's argument will be there is no way to identify who was in the photo," and "Plaintiff is quite a bit older than C. Allen"). There is nothing untoward about these statements. Regarding

7

Worley's communications with C. Allen after 5 pm and after the investigation concluded, plaintiff provides no evidence as to the contents of the communications beyond that she spoke to him about a potential restraining order against plaintiff. The communications themselves are not evidence of bias or animus. Simply put, plaintiff has provided no evidence supporting his theory that Worley acted with malice in his investigation.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment [DE 20] is GRANTED. For good cause shown, the motion to seal [DE 24] is also GRANTED. The Clerk is DIRECTED to seal docket entries 21, 22, 23, 27, 28, and 29. The Clerk is further DIRECTED to enter judgment in favor of defendants and close the case.

SO ORDERED, this __14__ day of April, 2020.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE